### PETROLEUM ROYALTIES CO. OF OKLAHOMA et al. v. HARTFORD ACCIDENT & INDEMNITY CO.

#### No. 1841.

Circuit Court of Appeals, Tenth Circuit.

Sept. 6, 1939.

H. H. Rogers and H. R. Young, both of Tulsa, Okl. (Logan Stephenson, Quinn Dickason, and A. F. Moss, all of Tulsa, Okl., on the brief), for appellants.

Wallace E. Robertson, of Oklahoma City, Okl. (Harold R. Williams, of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

The Petroleum Royalties Company, hereinafter called the Trust Estate, is a common law trust organized in the State of Oklahoma by a declaration of trust dated September 19, 1925, and filed for record in said state.

· The Petroleum Royalties Company of Oklahoma, hereinafter called the Corporation, is a Delaware corporation organized under the laws of Delaware, January 13, 1931. The trustees of the Trust Estate were F. H. Greer, L. L. Greer and J. A. Ruffer. F. H. Greer, L. L. Greer and J. A. Ruffer also were the managing officers and directors of the Corporation at the time of its organization and during all the time involved in this action.

Upon the organization of the Corporation, L. L. Greer, F. H. Greer and J. A. Ruffer, trustees of the Trust Estate, conveyed to the Corporation all of the property of the Trust Estate, and then concocted a scheme to procure from the owners of the beneficial interests in the trust estate an exchange of their beneficial interest in the trust estate for preferred stock in the Corporation. In some instances they were successful. In others they failed.

On April 20, 1931, T. J. Booth, who had refused to consent to the exchange, on behalf of himself and other shareholders in the Trust Estate, commenced an action against the Corporation. The bill prayed that the transfer of assets of the Trust Estate to the Corporation be canceled and set aside and that the trustees be required to account for a large number of alleged trust violations, and that the trustees of the Trust Estate be removed and new trustees appointed.

On October 5, 1931, the trial court entered its decree and adjudged and decreed that the transfer of the assets of the Trust Estate to the Corporation be set aside as void, and that the Corporation should assign, transfer and deliver back such assets to the new trustees. An appeal was taken by the Corporation from this decree to the Circuit Court of Appeals, (Greer Inv. Co. et al. v. Booth et al., 10 Cir., 62 F.2d 321) which court, on the 19th day of December, 1932, affirmed the decision rendered by the trial court.

Among the assets conveyed by the trustees of the Trust Estate to the Corporation was a royalty interest known as the Jackson lease. The title of the Trust Estate to its interest in this lease was questioned and suit was instituted to adjudicate the title. The Carter Oil Company was the producing company of the Jackson lease. Upon filing of this suit the Carter Oil Company refused to pay any further royalty payments on account of this interest, and impounded the money from this interest.

To procure this money, the Corporation, on the 17th day of March, 1931, made an application to the Hartford Accident and Indemnity Company, herein called the Indemnity Company, for a bond, and on the same day the Indemnity Company wrote a bond in the principal sum of Twenty-Five Thousand Dollars ($25,000) agreeing to indemnify the Carter Oil Company against loss on account of the payment of said oil royalties of the Corporation. After the issuance of this bond the Carter Oil Company paid to the Corporation Twenty-Four Thousand, Two Hundred Thirteen Dollars and Eighteen Cents ($24,213.18). On the 4th day of February, 1935, judgment was entered, holding void the title of the Trust Estate in the Jackson lease, whereupon demand was made by the prevailing parties in said litigation upon the Carter Oil Company for the payment to them of the money which had been wrongfully paid out. The Carter Oil Company made said payment and thereupon made demand both upon the Trust Estate and upon the Indemnity Company for reimbursement.

The Indemnity Company reimbursed the Carter Oil Company to the amount of Twenty-four Thousand, Two Hundred Thirteen Dollars and Eighteen Cents ($24,213.18), and took from the Carter Oil Company an assignment and subrogation agreement of its right against the Corporation and the Trust Estate. The Indemnity Company then filed suit against the Trust Estate seeking to recover the amount which it had paid under said bond to the Carter Oil Company. Judgment was entered by the trial court in favor of the Indemnity Company and against the Trust Estate for Twenty-Four Thousand, Two Hundred Thirteen Dollars and Eighteen Cents ($24,213.18), with interest at six per cent, and for an attorneys' fee of One Thousand Five Hundred Dollars ($1,500). From that judgment an appeal was taken by the Trust Estate to this court.

The Corporation, by virtue of the wrong which had been committed by the faithless trustees of the Trust Estate, who were also the managing officers and directors of the Corporation, became a constructive trustee, a trustee ex maleficio, of

all the trust property, and was restricted in its dealings with the property to such duties as the law imposed upon it as such trustee.

■ The Indemnity Company, in writing the bond for the Corporation, dealt with the Corporation as such and not with it as a trustee. It is confined in its quest for recovery of the loss which it had suffered by virtue of the writing of said bond to its rights and remedies against the Corporation, unless some equitable principles have intervened which would permit it to seek recovery against the Trust Estate.

The theory of the Indemnity Company is that it has a right to pursue the assets reconveyed to the Trust Estate. It alleges: "that said shareholders of said estate are the owners of the property thus taken from said corporation, and are enjoying the benefits thereof, that the transfer of said assets to said trust estate was without consideration; that, as aforesaid, said corporation became then and there wholly insolvent and unable to pay any of its debts or to discharge any of its obligations and liabilities; that having acquired all the assets of said corporation and said corporation being totally insolvent, and no provision having been made for the payment of the debts or the performance and discharge of its obligations and liabilities, and the shareholders of the said trust estate, through said trustees, and said receiver having continued the business of said corporation, as aforesaid, the said trust estate and the shareholders thereof are liable to this plaintiff for the payment to it of the said amount so expended by it by virtue of said indemnity agreement, bond, * * *"

This is hardly a fair statement of the transaction as it was. The transfer of said property back to the Trust Estate was not without consideration; the transfer from the Trust Estate to the Corporation was the transaction without consideration, and the Trust Estate was simply receiving back what was its own and that of which it had been despoiled by the faithless trustees. The Trust Estate did not acquire all of the assets of said Corporation. It simply acquired that which was its own and which never had been the property of the Corporation.

Neither is it correct to say that the trustees of said Trust Estate are continuing the business of the Corporation. The purposes for which the Delaware corporation was formed were entirely different from the purpose for which the Trust Estate was created, and the Trust Estate is in no wise carrying on or continuing the business of the Corporation.

■ The Trial Court decided this case in favor of the Indemnity Company upon the equitable principle that where one of two innocent persons must suffer from the fraud of another, the loss must fall on him whose negligence or imprudence has made possible the perpetration of the fraud. With this enunciation of principle we find no fault. We fail to see how it applies to this case. In what way were the owners of the beneficial interest in the Trust Estate negligent? The Trust Estate was created for a specific purpose; the powers of the trustees were limited; the owners of the property of the Trust Estate held a certificate showing their beneficial interest. The faithless trustees, in violation of the obligation and duty they owed to the Trust Estate, fraudulently disposed of all the property of said Trust Estate, in violation of the express terms and agreements of said trust instrument.

The beneficial holders of said interest had no knowledge of this; they did not participate in this transfer in any way; they did not acquiesce therein. The first knowledge they had of the transaction was when the perpetrators of this fraud approached them by means of a letter and tried to persuade them to surrender their beneficial interests in the Trust Estate and take in exchange therefor stock in the Corporation which they had formed.

■ There is no proof that the Indemnity Company, in writing this bond, relied upon the Corporation's ownership of these assets. It does not appear that the Corporation furnished the Indemnity Company with a financial statement. Nor could the Indemnity Company have relied upon the Corporation's ownership of these assets, had it had knowledge of them. The trust instrument and amendments thereto were duly recorded in Oklahoma as required by law. By the terms of the trust instrument the trustees could not convey the beneficial title to the trust property to the Corporation. Of this fact the Indemnity Company had constructive knowledge.

■ The Corporation was organized January 13, 1931; the Articles of Incorpora-

tion were filed in Oklahoma January 17, 1931; and the property of the Trust Estate was wrongfully conveyed to the Corporation shortly thereafter. Suit was instituted to set aside this transaction on the 20th day of April, 1931. No doubt some time intervened after the transfer of the trust property before the holders of the shares in the Trust Estate gained knowledge of the transaction. They cannot be held to be guilty of laches in instituting their action to rescind the transaction and to recover back the property that had been wrongfully taken from them.

■ A trustee ex maleficio may incur obligations within the limited powers of such a trust in the doing of the things which are necessary for the preservation of the Trust Estate, and which are of benefit to it, but any obligation incurred by such a trustee in excess of his powers as such cannot become an obligation enforceable against trust property, and is his personal debt for which the trust estate cannot be held liable, unless by its conduct it has estopped itself from asserting the truth. Restatement of the Law of Trusts, Section 245; Loos v. Wilkinson, 113 N.Y. 485, 21 N.E. 392, 4 L.R.A. 353, 10 Am. St.Rep. 495; Cann v. Barry, Mass., 1937, 10 N.E.2d 88; Corbett v. Benioff, 126 Cal. App. 772, 14 P.2d 1028; In re McCrory Stores Corp., D.C., 12 F.Supp. 267.

Was it necessary for the preservation of the trust property that the indemnity bond be executed by the trustee ex maleficio? The Carter Oil Company is one of the large, financially responsible oil producing companies. It accepted its liability for the payment of this money when the rightful owner thereto was established, and impounded the proceeds from the oil runs. What benefit was gained to the trust estate by executing the indemnity bond and having these payments made to the trustee ex maleficio? The money was perfectly safe where it was; as a matter of fact, it was much safer with the oil company

than it was with the faithless trustees. Not only did the trust estate not receive any benefit from this transaction, but it suffered a detriment. The premium for this bond of Twenty-Five Thousand Dollars was no doubt paid from the assets of the trust company.

■ There is a complete absence of proof showing that the Trust Estate, by its conduct, estopped itself to challenge the transaction in procuring said indemnity bond and the expenditure made therefor.

■ Before an obligation incurred by a trustee ex maleficio can be binding upon a trust, it must be such a one that the satisfaction thereof by the trustee would entitle him to reimbursement from the trust estate. Essex Trust v. Enwright, 214 Mass. 507, 102 N.E. 441, 47 L.R.A.,N.S., 567; 65 C.J. § 749, page 865.

If a constructive trustee is not enabled to recover an obligation incurred against a trust estate because the obligation is not beneficial to the trust estate or beyond his powers as a constructive trustee, then the holder of such an obligation can be in no better position in relation to the trust estate than the constructive trustee himself is. 3 Bogert, Trust and Trustees, § 716, pages 2125, 2126; 65 C.J. § 569, pages 702, 703; Clark v. Provident Trust Co., 329 Pa. 421, 198 A. 36; Kincaid v. Hensel, 185 Wash. 503, 55 P.2d 1050.

■ Out of the royalty payments received by the Corporation from the Carter Oil Company, after the issuance of the bond, only Two Dollars and Sixty-one Cents ($2.61) came back to the Trust Estate. To this extent the Trust Estate benefited by the transaction.

■ The judgment is modified, limiting recovery of the Indemnity Company to Two Dollars and Sixty-one Cents ($2.61). Costs are assessed against Appellee, the Indemnity Company. As modified, the judgment is affirmed.