James C. GEORGE, an incompetent by Audrey J. George, his guardian, Plaintiff,

v.

John C. TONJES, Special Administrator of the Estate of David J. Bredda, Deceased, et al., Defendants.

PROFESSIONAL OFFICE BUILDINGS, INC., a corporation, et al., Defendants and Third-Party Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION, a corporation, et al., Third-Party Defendants.

No. 74-C-232.

United States District Court,
W. D. Wisconsin.

June 22, 1976.

James A. Olson, Lawton & Cates, Madison, Wis., and Philip H. Corboy & Associates, Chicago, Ill., for James C. George.

M. W. Bieber, Johnson, Bieber & Swingen, Madison, Wis., and Lord, Bissel & Brook, Chicago, Ill., for John C. Tonjes, David Linton Dann and K. B. C., Inc.

John H. Schmid, Jr., Axley, Brynelson, Herrick & Gehl, Madison, Wis., for Royal Indemnity Co.

Carl F. Anderson, Mequon, Wis., and John A. Kluwin, Kluwin, Dunphy, Hankin & McNulty, Milwaukee, Wis., for Aviation Radio, Inc.

Carlyle H. Whipple, McBurney, Musolf & Whipple, Madison, Wis., for Professional Office Buildings, Inc., Touche Leasing Corporation, and Arthur L. Touchet.

Carroll Metzner, Aberg, Bell, Blake & Metzner, S.C., Madison, Wis., for Rockwell International Corp.

James Lorimer, Boardman, Suhr, Curry & Field, Madison, Wis., for Edo-Aire.

John Koeppl, Stafford, Rosenbaum, Rieser & Hanson, Madison, Wis., for King Radio Corp.

ORDER

JAMES E. DOYLE, District Judge.

Defendants Professional Office Buildings, Inc. (POB), Touche Leasing Corporation (Touche Leasing), and Arthur L. Touchet (Touchet), have moved to dismiss Count VIII of plaintiff's Second Amended Complaint on the ground that plaintiff has failed to state a claim against them on which relief can be granted. Count VIII alleges a cause of action against the defendants based on the theory that one who leases a defective or unreasonably dangerous product may be held strictly liable for the physical harm caused by the defective product. Defendants POB, Touche Leasing, and Touchet contend that there is no such cause of action against a lessor under

Wisconsin law. The motion is presently before the court.

A federal court sitting in a diversity action (which this is) must apply substantive law as it would be applied by the state courts. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Here, however, there is no substantive law in point, as the Wisconsin supreme court has not had an opportunity to consider the issue raised by plaintiff.[1] Therefore, the court's task is to predict whether the Wisconsin supreme court would adopt or reject plaintiff's theory of liability were the issue before the court. The fact that the Wisconsin court has not recognized the expanded liability theory advanced by plaintiff does not preclude this court from recognizing it, if it appears likely that the state court would do so.

"In vicariously creating law for a state, the federal court may look to such sources as the Restatement of Law, treatises in law review commentary, and the 'majority rule'" Wright, Law of Federal Courts, § 58 p. 240 (2d Ed. 1970). I turn now to a consideration of those sources of law to which the Wisconsin court might refer.

■ As a starting point, I note that the Wisconsin supreme court is one of the state courts which has adopted the rule of strict liability in tort, although until now it has limited the application of the rule to sellers and manufacturers. The decision to abandon the use of warranty concepts in products liability cases was announced in *Dippel v. Sciano,* 37 Wis.2d 443, 155 N.W.2d 55 (1967). In that case, the court adopted the rule of strict liability in tort as set forth in § 402A of Restatement, 2 Torts 2d, pp. 347, 348, which reads as follows:

"Sec. 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

In keeping with the development of the doctrine of comparative negligence, the Wisconsin court held that a finding of strict liability under the standards of § 402A was the equivalent of negligence per se, thereby keeping available to sellers and manufacturers the defenses of contributory negligence. *Greiten v. LaDow,* 70 Wis.2d 589, 600, 235 N.W.2d 677 (1975).

It is defendants' position that the Wisconsin court would look to the Restatement as a guideline for determining the liability of a lessor. The current draft of the Restatement treats lessors in sections 407 and 408. As these provisions now read, a plaintiff is required to show that the lessor either knew or had reason to know that the leased chattel was dangerous or was likely to be dangerous for the purpose for which it was to be used (§ 407) or, where the chattel is for immediate use, that the lessor failed to exercise reasonable care to make the chattel safe for use or failed to disclose its actual condition to those who might be expected to use it (§ 408).

Although the Restatement provisions may have continuing validity for the casual, non-commercial lessor, the evident trend of state court decisions is to expand the con-

1. For the purpose of deciding this motion, I assume that the law to be considered is that of Wisconsin. Although the accident which gave rise to this lawsuit occurred in Mississippi, plaintiff has not asked the court to apply Mississippi law to any aspect of the case, nor has he advised the court that there is a conflict in the laws of the two states on the issue which is the subject of this motion.

cept of strict liability for sellers and manufacturers to include commercial lessors on the ground that such persons put products into the stream of commerce "in a fashion not unlike a manufacturer or retailer," *Cintrone v. Hertz Truck Leasing & Rental Service*, 45 N.J. 434, 212 A.2d 769 (1965), and, also like sellers and manufacturers, are in a position to control their risks through the adoption of inspection and maintenance procedures and to pass on to the lessees the costs of the protective measures and of insurance. *Cintrone v. Hertz Truck Leasing & Rental Service, id.; Stang v. Hertz Corp.*, 83 N.M. 730, 497 P.2d 732 (1972); *Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. 71, 470 P.2d 240 (1970); *Bachner v. Pearson*, 479 P.2d 319 (Alaska, 1970); *Gallucio v. Hertz Corp.*, 1 Ill.App.3d 272, 274 N.E.2d 178 (1971); *Price v. Shell Oil Co.*, 2 Cal.3d 245, 85 Cal.Rptr. 178, 466 P.2d 722 (1970). See also, 52 A.L.R.3d 121 et seq.

In *Dippel*, the Wisconsin court found it significant that

"the seller is in the paramount position to distribute the costs of the risks created by the defective product he is selling. He may pass the cost on to the consumer via increased prices. He may protect himself either by purchasing insurance or by a form of self-insurance. In justification of making the seller pay for the risk, it is argued that the consumer or user has the right to rely on the apparent safety of the product and that it is the seller in the first instance who creates the risk by placing the defective product on the market. A correlative consideration, where the manufacturer is concerned, is that the manufacturer has the greatest ability to control the risk created by his product since he may initiate or adopt inspection and quality control measures thereby preventing defective products from reaching the consumer." *Dippel v. Sciano, supra*, 37 Wis.2d at 450–51, 155 N.W.2d at 58.

As the cited state court decisions indicate, these policy considerations are equally significant in the case of commercial lessors. In fact, it can be argued that a lessee is more dependent upon the skill and judgment of the dealer than is a buyer, since the buyer is likely to take more time in choosing and inspecting the product than is a lessee.

The Wisconsin supreme court has been sensitive in the past to trends in the products liability field and to changes in business practices which demonstrate the need for the expansion of existing legal concepts or the adoption of new concepts. There is no reason to expect that the Wisconsin court would ignore the impact of the enormous growth of the leasing industry or to expect that the court would not be persuaded to adopt the rule that one who leases a defective product which is unreasonably dangerous to the user or to his property is negligent as a matter of law if (a) the lessor is engaged in the business of leasing such a product and (b) the product is expected to and does reach the user without substantial change in the condition in which it is leased.

I conclude that there can be a cause of action for strict liability in tort against lessors under Wisconsin law.

Defendants contend that, even if there is a cause of action in Wisconsin against lessors under some circumstances, those circumstances are not present here, because they are not in the business of leasing airplanes; because defendants Touche Leasing and Touchet have no legal interest in the airplane which is here in dispute; and because none of these three defendants had any legal control over the airplane at the time it crashed. On a motion to dismiss for failure to state a claim I can take no note of defendants' assertions; my task is confined to determining whether taken as true and construed liberally in plaintiff's favor, the allegations of the complaint set out a claim upon which relief can be granted.

Plaintiff has alleged that defendants POB, Touche Leasing, and Touchet were engaged in the business of leasing aircraft; that these defendants leased the airplane in question; that, at the time it left defendants' control, the airplane was in an unreasonably dangerous condition; that the airplane crashed on December 11, 1972; and

that the defective condition of the airplane was the proximate cause of the injuries suffered by plaintiff for which he is now suing.

These allegations are sufficient to state the claim against defendants POB, Touche Leasing, and Touchet, that as lessors they were negligent as a matter of law in leasing the defective aircraft in which plaintiff was injured.

On the basis of the foregoing discussion, IT IS ORDERED that the motion of defendants Professional Office Building, Inc., Touche Leasing Corporation, and Arthur L. Touchet to dismiss Count VIII of plaintiff's Second Amended Complaint for plaintiff's failure to state a claim upon which relief can be granted is DENIED.