St. Louis-San Francisco Railway Company *v.*
Travis Insulation Company.

4-8912                                223 S. W. 2d 765

Opinion delivered October 24, 1949.

*E. G. Nahler* and *E. L. Westbrooke, Jr.,* for appellant.

*Ivie C. Spencer,* for appellee.

George Rose Smith, J. This suit was brought by
Travis Insulating Company, L. W. Hamilton, and Federal Insurance Company, for property damage resulting
from a fire caused by the appellant railroad. At the
close of the testimony the only instructions offered were

requests for directed verdicts. In accordance with our practice in that situation the trial judge decided all questions of fact, directing a verdict against the railroad upon the Travis and Hamilton claims and in its favor upon the insurance company's claim. Only the railroad has perfected an appeal.

Arkansas Sales Company had leased from the railroad certain property on its right of way for the purpose of maintaining a warehouse owned by the sales company. After the fire the insurance company paid to its insured, the lessee, the amount of its loss and by subrogation asserted its claim against the railroad. Travis and Hamilton had stored personal property in the warehouse and joined in the suit to recover their damages.

Appellant relies upon two paragraphs in its lease to the sales company to exempt it from liability for these claims. The first is paragraph ten, by which the lessee assumed liability for ''all damages resulting from fire . . . to property of any kind or character . . . that may now or hereafter be upon said leased premises . . . and to whomsoever the same may belong, whether any such damages shall be caused by negligence of lessor . . . or otherwise. Lessee covenants and agrees to release . . . and to protect, save harmless and indemnify lessor from and against any and all damages in this paragraph referred to . . .''

Provisions of this kind, exempting the railroad from liability to its tenant, are almost universally upheld when inserted in a lease covering property situated on the railroad right of way. Elliott on Railroads (3rd Ed.), § 1760. The placing of property on the right of way is not required by any public duty of the carrier and increases the danger of fire; so the policy that ordinarily prevents a railroad from contracting against the consequences of its own negligence is inapplicable. Without discussion of the principles involved we sustained a similar provision in *Mo. Pac. R. Co.* v. *Barnes,* 197 Ark. 199, 121 S. W. 2d 896.

This provision in the lease, however, does not affect the rights of Travis or Hamilton. The lease does not

purport to extinguish the railroad's possible liability to third persons, as was the case in some of the decisions cited by appellant. Here the lessee merely agreed to indemnify the lessor against such claims and to release any claims of its own. No doubt the trial court ruled against the insurance company for the reason that as subrogee it occupied no better position than its insured, which had already agreed to make no claim for damage by fire.

But the same considerations obviously do not apply to Travis and Hamilton. Their causes of action are not affected by the lessee's agreement to indemnify the lessor. The *Barnes* case, *supra*, seems to lend support to the opposite conclusion only because the facts were not fully stated. The opinion indicates that J. K. Barnes was the lessee, while the court relied upon the lease to defeat the claim of Maggie Barnes—apparently a stranger to the lease. But the transcript and briefs reveal that Maggie Barnes was undeniably a party to the lease. She owned the improvements on the leased premises and was in reality the lessee. J. K. Barnes, her son, had managed her property for years and signed the lease in his own name merely as a matter of convenience. The *Barnes* case is not authority for the position that a clause like the one now in question relieves the railroad from the claims of third persons.

The other provision in the lease relied on by appellant is paragraph sixteen: "Lessee shall have no right to, and will not, assign this agreement or sublet said leased premises, or any part thereof, or permit the same to be used or occupied by any person, firm or corporation other than lessee, without first obtaining the written consent of lessor thereto." The railroad's consent had not been obtained when the Travis and Hamilton property was stored. Appellant, contending that this paragraph of the lease was violated, characterizes Travis and Hamilton as trespassers and cites Elliott on Railroads, *supra*, § 1759, as authority for the statement that a trespasser on the railroad right of way cannot recover for loss caused by fire.

We do not decide whether an entry in violation of the lease would be a trespass; for we do not think that the lease prohibited the action taken by the lessee in this instance. We pass over the prohibitions against assignment or subletting, as the meager testimony in this case does not establish either one. The real question is whether the lessee permitted the premises to be "used or occupied" by Hamilton or Travis without the railroad's consent. We think not. The burden was upon the appellant to prove this affirmative defense. The trial court was justified in believing that the lessee merely allowed Travis and Hamilton to store personal property upon its premises, without relinquishing its own dominion and control. It was not shown that any specified part of the warehouse was turned over to the exclusive possession of these appellees. All that can be said is that the lessee accepted property for safekeeping under its own supervision.

This conduct does not show use or occupancy of the premises by Travis and Hamilton. On the contrary, it was the lessee who was using and occupying the property, for the purpose of storing chattels as a bailee. This conclusion is inescapable when we observe that this is a printed lease, prepared by the railroad and to be construed favorably to the lessee. If the lessor intended to forbid the storage of property belonging to others, it could have put a clause to that effect in the lease. Instead, it merely prohibited use and occupancy by third persons. These two words are often used interchangeably. *Smith v. Mechanics' & Traders' Fire Ins. Co.*, 32 N.Y. 399, and *Jackson v. Sewell*, 284 S.W. 197 (Mo.App.). A definition of "use" in Webster's New International Dictionary is: "That enjoyment of property which consists in its employment, occupation, exercise or practice."

In the view we take, the lessee did not violate the terms of its lease in accepting property for storage. This answers the argument that Hamilton at least should be bound by the contract, he being the secretary of the lessee corporation and having attested the lease in its behalf. Hamilton's knowledge of terms of the lease is of

course immaterial if, as we hold, the lease permitted what was done.

In closing its argument the railroad complains of the allowance of an attorney's fee to the appellees. Hamilton recovered only half the amount he sued for, and appellant insists that this fact precludes the award of the fee. That is the rule under our statute allowing attorney's fees in insurance cases, but the reason is that the statute applies only when the insurer fails to pay the loss "after demand made therefor." Ark. Stats. (1947), § 66-514; *Pac. Mut. Life Ins. Co. v. Carter,* 92 Ark. 378, 123 S.W. 384, 124 S.W. 764. The statute applicable to the present case requires only that the plaintiff recover in the action. *Ibid.,* § 73-1014. We have twice upheld the allowance when the plaintiff recovered less than the amount of damages alleged in his complaint. *Kansas City S. R. Co. v. Cecil,* 171 Ark. 34, 283 S.W. 1; *Mo. Pac. R. Co. v. Campbell,* 206 Ark. 657, 177 S.W. 2d 174.

Affirmed.

GRIFFIN SMITH, C. J., and FRANK G. SMITH and HOLT, JJ., dissent.

HOLT, J. I respectfully dissent for the reason that I think the present case is controlled by the decision of this court in *Missouri Pacific Rd. Company v. Barnes,* 197 Ark. 199, 121 S. W. 2d 896. The situation in that case was similar in effect to that presented here. Here, the lease was between the Arkansas Sales Company and appellant, and it appears that Hamilton and Travis stored property in the building which was on appellant's right-of-way.

The lease provided against subleasing any part without written notice to appellant. Sections 10 and 16 in the present lease contain the following provisions: "(Lessee) . . . 10. To assume all damages resulting from want or failure at any time of title on the part of Lessor to said leased premises, or any part thereof, and all damages resulting from fire communicated from the right-of-way, premises, locomotives, trains, cars or other instrumentalities of Lessor, or otherwise, to prop-

erty of any kind or character (including, among other things, buildings, structures, improvements, and the contents thereof) that may now or hereafter be upon said leased premises, or any part thereof, and to whomsoever the same may belong, whether any such damages shall be caused by negligence of Lessor or any of its agents, servants or employees, or otherwise. Lessee covenants and agrees to release and does hereby release, and to protect any and all demands, causes of action, suits, judgments, attorney's fees, costs and expenses on account thereof.

"16. Lessee shall have no right to, and will not, assign this agreement or sublet said leased premises, or any part thereof, or permit the same to be used or occupied by any person, firm or corporation other than Lessee, without first obtaining the written consent of Lessor thereto."

It seems to me that the language used is so simple, plain and crystal clear as to require no construction.

Appellees, Hamilton and Travis, were not on appellant's property with permission or consent of appellant, railroad company. The undisputed testimony shows that they had not obtained the written consent of the Lessor, railroad company.

In the Barnes case, *supra,* we held: "RAILROADS —LEASE OF RIGHT-OF-WAY—Fire.—In appellee's action for damages for the destruction of a warehouse by fire owned by her and located on appellant's right-of-way which she had leased for warehouse purposes under a lease providing for written notice of termination thereof and also exempting appellant from liability for loss whether the damage was the result of fire, flood or other agency, held that a verbal notice was insufficient to terminate the lease, and the lease being in force when the loss by fire occurred, appellant was not, under the terms of the lease, liable therefor."

Unless the Barnes case, which, as I see it, is squarely in point here, is overruled, which we refuse to do, the judgment here should be reversed.

Frank G. Smith, J., concurs.