733 P.2d 1158

**SUPERIOR COMPANIES,**
**Plaintiff-Appellee,**

v.

**KAISER CEMENT CORPORATION,**
**Defendant-Appellant.**

**No. 1 CA–CIV 8797.**

Court of Appeals of Arizona,
Division 1, Department D.

Dec. 18, 1986.

Review Denied March 4, 1987.

---

* Paul G. Ulrich was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. Art. VI, § 3 and A.R.S. §§ 12–145–47.

Gallagher & Kennedy, P.A. by Elliot Talenfeld and James Wm. Junker, Phoenix, for plaintiff-appellee.

Holloway & Thomas, P.C. by Paul W. Holloway and Thomas P. Burke, II, Phoenix, for defendant-appellant.

## OPINION

HAIRE, Judge.

On this appeal we are asked to determine whether a lease agreement requires the lessee to indemnify the lessor for liability incurred by the lessor resulting from an injury occurring on the leased premises, and, if so, whether such contractual indemnification is precluded by Arizona's Workers' Compensation Act.

In 1974, the Atchison, Topeka & Santa Fe Railway Company ("the railroad") and Superior Companies (Superior) entered into a contract for industry track whereby the railroad agreed to maintain and operate a spur track on property owned by Superior. The contract also provided that Superior would indemnify and hold the railroad harmless against all claims resulting from the maintenance, use or presence of a loading/unloading device, *whether caused or contributed to by the railroad's negligence.*

In 1980, Superior leased the same property to Kaiser Cement Corporation (Kaiser) pursuant to a lease agreement requiring Kaiser "to indemnify and save [Superior] harmless on account of any and all claims or liability in any manner arising from [Kaiser's] use and occupancy of the leased premises."

In November 1980, an employee of Kaiser was injured while unloading railroad cars on the leased premises. For the purposes of this appeal it is assumed that the accident was caused, at least in part, by the active negligence of the railroad. The employee filed an action against several defendants, including the railroad, to recover

damages for injuries suffered in that accident. The railroad tendered the defense of this action to Superior pursuant to the terms of the 1974 indemnity provision. Superior accepted the tender, and in turn tendered the defense against the employee's action to Kaiser. When Kaiser refused to accept the tender, Superior filed this action against Kaiser to require Kaiser to assume the defense of the railroad and to pay any liability which the railroad might incur arising out of the employee's action.

After both parties moved for summary judgment, the trial court entered judgment in favor of Superior.

On appeal to this court Kaiser contends that the trial court erred in ordering it to indemnify Superior because (1) the lease agreement does not require indemnification under the facts of this case and (2) Kaiser cannot be responsible for any further liability owed to its employee because it provided workers' compensation to him.

■ The extent of a contractual duty to indemnify must be determined from the contract itself. *INA Ins. Co. of North America v. Valley Forge Ins. Co.,* 150 Ariz. 248, 252, 722 P.2d 975, 979 (App. 1986); *Skousen v. W.C. Olsen Inv. Co.,* 149 Ariz. 251, 253, 717 P.2d 930, 932 (App. 1986); *Estes Co. v. Aztec Constr., Inc.,* 139 Ariz. 166, 168, 677 P.2d 939, 941 (App. 1983). As previously stated, the lease agreement between Kaiser and Superior requires Kaiser to indemnify Superior for "any and all claims or liability in any manner arising from [Kaiser's] use and occupancy of the leased premises."

Kaiser first argues that the claim for which Superior seeks indemnification did not arise out of Kaiser's use and occupancy of the property, but rather arose from the railroad's use and from the contractual liability assumed by Superior.

We find no merit to Kaiser's contention that because its employee was injured when a railroad car was being unloaded, the accident arose out of the railroad's, rather than Kaiser's, use of the premises. The lease does not limit Kaiser's liability to acts by Kaiser. Kaiser was conducting a cement transfer business on the property and utilized the rail facilities for deliveries. The railroad's use of the track when Kaiser's employee was injured was directly related to Kaiser's business activities.

■ It would make little sense to read the indemnity provision to mean that the parties intended that Superior would be indemnified against all claims arising from acts of Kaiser's employees using the premises, but not from acts of Kaiser's business invitees involved in Kaiser's use of the property. Although Kaiser's invitee, rather than Kaiser, was involved in the accident, we find that the employee's claim nevertheless arose out of Kaiser's use and occupancy of the premises for its business purposes.

Likewise, we find no merit in Kaiser's contention that because Superior's legal liability is based on the indemnity provision in Superior's 1974 contract with the railroad, the claim does not arise from Kaiser's use of the premises. The factual basis of the claim is clearly related to Kaiser's use of the rail facilities.

■ Contracts are construed to cover those losses or liabilities which reasonably appear to have been intended by the parties. *Estes Co.,* 139 Ariz. at 168, 677 P.2d at 941; *Shirley v. National Applicators of California, Inc.,* 115 Ariz. 521, 526, 566 P.2d 322, 327 (App.1977). We find that the plain meaning of the indemnity provision as well as its commercial context brings the claim within its ambit.

■ We next consider Kaiser's contention that its indemnification agreement with Superior does not require it to indemnify Superior because the liability involved arose out of the railroad's own negligence. Arizona follows the "express negligence doctrine," holding that unless an indemnity contract expresses in clear and unequivocal terms the intentions of the indemnitor to indemnify for losses caused by the indemnitee's own active negligence, there is no right of indemnity for such acts. *Southern Pacific Co. v. Gila River Ranch, Inc.,*

105 Ariz. 107, 108, 460 P.2d 1, 2 (1969). Where an indemnity provision does not specifically address what effect the indemnitee's negligence will have on the indemnitor's obligation, it is regarded as a general indemnity agreement. *Estes Co.*, 139 Ariz. at 168–69, 677 P.2d at 941–42. It is well settled that under a general indemnity agreement an indemnitee is not entitled to indemnification for a loss resulting from its own active negligence but is entitled to indemnification for its own passive negligence. *Busy Bee Buffet v. Ferrell*, 82 Ariz. 192, 198–99, 310 P.2d 817, 821 (1957); *Estes Co.*, 139 Ariz. at 169, 677 P.2d at 942; *Transcon Lines v. Barnes*, 17 Ariz.App. 428, 429–31, 498 P.2d 502, 503–04 (1972).

The indemnity clause in Kaiser's lease is a general indemnity agreement which does not contain language that requires Kaiser to indemnify Superior for Superior's negligence. However, it is undisputed that Superior played no role in the operation of Kaiser's business or in the use or maintenance of the subject railroad facilities. The unloading device at which the underlying accident occurred was installed by Kaiser or its predecessor/assignor, Consolidated Concrete Supply, Ltd. Superior's connection to the spur track and the unloading device is simply that it owns the parcel occupied by Kaiser over which the spur line runs. The track has never been used or maintained by Superior.

Although conceding that Superior itself was not actively negligent, Kaiser argues that the railroad's active negligence should be imputed to Superior, and Kaiser should not have to indemnify Superior for liability arising from that negligence. In support of its contention, Kaiser cites various subrogation cases that involve derivative claims for indemnification.

Kaiser relies on *St. Louis-San Francisco Ry. Co. v. Travis Insulation Co.*, 215 Ark. 868, 223 S.W.2d 765 (1949), which involved a railroad that had leased certain property on its right-of-way to a lessee. The lease contained a provision whereby the lessee agreed to indemnify the railroad from loss "whether any such damages shall be caused by negligence of lessor ... or otherwise." *St. Louis-San Francisco Ry. Co.*, 223 S.W.2d at 766. The insurance carrier for the lessee paid the lessee's claim for losses arising from a fire at the premises allegedly caused by the railroad's negligence. The insurer then filed a subrogation action against the railroad. The Arkansas Supreme Court held that the insurer, standing in the shoes of the lessee, its insured, was bound by the indemnity provision which the lessee had undertaken and could not recover against the railroad.

In *Glens Falls Indem. Co. v. Reimers*, 176 Or. 47, 155 P.2d 923 (1945), also cited by Kaiser, an electric company had contracted for a gunite job on the exterior of a substation building. The contractor indemnified the electric company against "all liability for personal injury ... or claims therefor which may arise or result from the performance, nonperformance or malperformance of this contract." *Glens Falls Indem. Co.*, 155 P.2d at 923. This was a general indemnity provision which made no reference to negligence on the part of the indemnitee-electric company.

An injured employee of one of the subcontractors sued and recovered against the electric company on grounds that the company had failed to protect the workers from certain high voltage wires. The electric company's insurer filed a subrogation action against the contractor under the general indemnity provision. The Supreme Court of Oregon held that since the electric company's negligence would have precluded recovery by the electric company against the contractor under the general indemnity provision, the electric company's insurer in a subrogation action would also be precluded by the company's negligence.

Kaiser argues that the instant case is analogous to *St. Louis-San Francisco Ry. Co.* and *Glens Falls Indem. Co.* It states that had the railroad been a party to the Kaiser-Superior general indemnity agreement, the railroad could not recover against Kaiser because it was actively negligent. It then concludes that Superior, as the railroad's indemnitor, steps into the

railroad's shoes and accordingly cannot recover. This analysis ignores the nature of Superior's claim. Superior does not press a derivative claim for indemnification against Kaiser as a subrogee of the railroad. Rather, Superior's rights arise directly from its own lease with Kaiser. Therefore, the subrogation cases cited by Kaiser are not helpful in resolving the issue presented by the indemnity agreements involved in this appeal.

We note that the public policy considerations underlying the express negligence doctrine have no application to the facts at hand. *Gila River Ranch* involved a lawsuit brought by a railroad against a ranch that had a license to construct and use a road across the railroad tracks. In exchange for the license, the ranch agreed to indemnify the railroad from liability resulting from the use of the crossing. An accident occurred at the crossing. The Arizona Supreme Court declined to impose liability upon the ranch for the railroad's own negligence, quoting the reasoning of the Oregon Supreme Court in a similar case:

> "The liability on such an indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation. No inference from words of general import can establish it." *Gila River Ranch*, 105 Ariz. at 108, 460 P.2d at 2 (quoting *Southern Pacific Co. v. Layman*, 173 Or. 275, 145 P.2d 295 (1944)) (emphasis in original).

The court went on to say:

> "The [Oregon] court also stated that any other interpretation could subject a farmer to ruinous liability for negligence of the railroad over which he had no control, and that neither party intended him to assume such a risk for the mere privilege of passing over the railroad's tracks. Another reason is the inequality of the bargaining power of a small ranch and the giant railroad." *Id.*

In this case, there is no apparent disparity of bargaining power between Kaiser and Superior. More importantly, in contrast to the "mere privilege of passing over the railroad's tracks," Kaiser obtained exclusive use of certain rail facilities for which Superior had indemnified the railroad in the existing contract for industry track. In exchange for the right to use the spur track and unloading device, Kaiser promised to indemnify Superior against claims arising from such use.

Superior played no role in the operation of Kaiser's business or in the use or maintenance of the railroad facilities. Thus, we find no unfairness that such a risk of loss be passed from the landlord, Superior, to the tenant, Kaiser.

We conclude that through its contractual arrangement with the railroad Superior did not "step into the shoes" of the railroad so as to become actively negligent. Therefore it was not precluded from enforcing its lease agreement for indemnification by Kaiser.

Kaiser next contends that because it has provided workers' compensation to its injured employee, it cannot be held responsible for any other liability owed to that employee. Kaiser argues that the employee's exclusive remedy against it is limited to that set forth in A.R.S. § 23–1021 *et seq.*

Although not directly in point, this issue has been addressed by this court in *Lechuga, Inc. v. Montgomery*, 12 Ariz.App. 32, 467 P.2d 256 (1970). In that case we considered a similar argument involving the possible effect of an indemnity clause which would make the employer ultimately liable for his employee's injuries, stating: "[W]e see nothing in the Workmen's Compensation Statute, or as a matter of public policy, which would prohibit an employer from contractually making himself liable for his employees' injuries." *Lechuga, Inc.*, 12 Ariz.App. at 36, 467 P.2d at 260.

This issue has also been addressed in several other jurisdictions. In 2A A. Larson, *Worker's Compensation Law* § 76.42 at 14–630 to 14–636 (1983), the issue is described as follows:

"The clearest exception to the exclusive-liability clause is the third party's right to enforce an express contract in which the employer agrees to indemnify the third party for the very kind of loss that the third party has been made to pay to the employee. A familiar example is the situation in which an employee is injured because of the condition of the premises, and recovers from the landlord who leased the premises to the employer; if the landlord in the lease has exacted a covenant from the employer to hold the landlord harmless in the event of such claims, the enforcement of this covenant does not violate the exclusive-remedy provision of the compensation act."

In support of the contrary position, Kaiser relies upon *Paul Krebs & Assoc. v. Matthews & Fritts Constr. Co., Inc.*, 356 So.2d 638 (Ala.1978). This case is referred to by Larson as follows:

"It is characteristic of compensation law that, however one-sided a majority rule may be, it is almost never completely unanimous—and the rule here under consideration is no exception, thanks to the 1978 Alabama holding in *Paul Krebs*." 2A Larson, § 76.43 at 14–639.

The commentator observes that the Alabama Supreme Court stands alone on this issue. *Id.* at 14–641.

In explaining the rationale for the majority rule, Larson states:

"[T]he immunity conferred [by the statutory exclusive-remedy provision] is only against actions for damages on account of the employee's injury; a third party's action for indemnity is not exactly for 'damages' but for reimbursement, and it is not 'on account of' the employee's injury but on account of breach of an independent duty owed by the employer to the third party." *Id.* § 76.41 at 14–630 and cases cited therein.

 Here the employee is not suing Kaiser in Kaiser's capacity as employer. In fact the employee is not suing Kaiser at all. Kaiser's obligation to pay damages, if any, which its employee may recover from the railroad arises from an independent contractual obligation which Kaiser owes to a third party, Superior. We conclude that under these circumstances, the Workers' Compensation Act does not relieve Kaiser of its duty to indemnify Superior.

Superior's request for attorney's fees on appeal pursuant to A.R.S. § 12–341.01(A) is granted, in an amount to be determined pursuant to Rule 21, Arizona Rules of Civil Appellate Procedure.

The judgment entered by the trial court is affirmed.

EUBANK, P.J., and GRANT, J., concur.